# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JUDITH D. EDMUNDS** | * | **CIVIL ACTION NO. 05-744** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Judith D. Edmunds, born December 25, 1942, filed applications for disability insurance benefits and supplemental security income on May 27, 2003, alleging disability as of September 15, 2000, due to arthritis, diverticulosis, high blood pressure, allergies, headaches, and pain.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Acadiana Family Practice Group dated August 11, 2000**. Claimant was treated for a very swollen right middle finger. (Tr. 94). The assessment was degenerative joint disease. She was prescribed Relafen.

**(2) Records from Felton Family Clinic dated December 4, 2000 to January 14, 2002**. On December 4, 2000, claimant complained of pain from her wrist and fingertip, weakness and pain in her right arm, and left ankle pain. (Tr. 98). She stated that she had been given prescriptions for NSAID and hypertension medications, but she had too many side effects. The assessment was hypertension, carpal tunnel, degenerative joint disease, GERD, and peripheral neuropathy. (Tr. 99).

On August 2, 2001, claimant complained of frequent backaches, for which she took Aleve with very poor results. (Tr. 96). She also complained of frequent diarrhea, which was better with Citrucel. She had good blood pressure for the previous several weeks. The impression was back pain, hypertension, and allergic rhinitis.

On January 14, 2002, claimant complained of a lump in her lower abdomen. (Tr. 95). Her blood pressure was 112/70. The impression was a pelvic mass, back pain, and degenerative arthritis. She was referred to UMC.

**(3) Records from University Medical Center ("UMC") dated March 19, 2002 to June 4, 2003**. On March 19, 2002, claimant complained of aching pain across the lower abdomen and back pain radiating into both legs. (Tr. 143). The diagnosis was a ventral hernia, for which she refused surgery. She was assessed with alcohol abuse on March 28, 2002, reporting that she consumed four to six drinks daily. (Tr. 142).

On November 21, 2002, claimant was admitted for rectal bleeding. (Tr. 114-27). A colonoscopy revealed diverticulosis and external hemorrhoids. (Tr. 114).

On May 21, 2003, claimant was seen for followup for diverticulosis. (Tr. 107). On examination, she had good flexion of the wrist, no swelling, and 5/5 strength. Her blood pressure was 170/87. The assessment was hypertension and diverticulosis. She was instructed to increase fiber in her diet and decrease alcohol intake.

**(4) Report from Opelousas General Hospital dated September 9, 2003**. X-rays of the lumbar spine revealed mild degenerative changes. (Tr. 144).

**(5) Consultative Internal Medicine Examination by Dr. Samuel J. Stagg, Jr. dated September 10, 2003**. Claimant complained of pain in both arms shooting down to her fingers, constant neck and low back pain going down both legs, burning and sticking in her feet nightly, hypertension, dizzy spells, headaches two to three times a week, and diarrhea with six or seven stools a day. (Tr. 145). She reported

3

that she drank socially. She took Aleve for headaches, and HCTZ and Mavik for high blood pressure. (Tr. 145-46).

On examination, claimant got in and out of the chair without difficulty, and her gait was normal. (Tr. 146). Her blood pressure was 160/110. She was 61 inches tall and weighed 192 ½ pounds.

Claimant was able to flex the cervical spine approximately 30 degrees, but could not extend it at all. She could laterally bend 10 degrees and rotate her chin approximately 15 degrees. She had no muscle spasm. She complained of pain in the posterior cervical area.

Claimant's heart had a sinus rhythm, with no cardiac murmurs, rubs or thrills. She had no apparent cardiac enlargement. Her heart tones were good.

Claimant's abdomen was obese. Her bowel sounds were present and normal. Her pulses were normal. She had no edema of the extremities.

Reflexes were normal. Claimant had no apparent muscle weakness or atrophy. Grip, dexterity, and grasping appeared normal. She had normal range of motion of the upper extremities.

Straight leg raising produced low back pain at 60 degrees. Claimant had normal range of motion of the knees, with slight crepitation. She had no effusions.

Claimant had no clubbing or cyanosis of the digits. She claimed to have decreased vibratory and fine touch sensation of the left lower extremity. She walked on her toes without difficulty, but was unable to walk on her heels.

Claimant flexed the lumbosacral spine approximately 30 degrees, and laterally bent and extended it 5 degrees or less. She complained of pain along the whole vertebral column. She had no muscle spasm.

Chest x-rays showed a CT ratio of 14 to 28 centimeters. She had borderline cardiomegaly. Lung fields were clear. Bony structure was normal. An EKG was within normal limits.

Dr. Stagg's impression was hypertension, etiology undetermined, severe; diverticulosis of the colon with previous hemorrhage; bilateral arm pain, etiology undetermined; cervical pain, possibly secondary to cervical disc disease; lumbosacral pain, secondary to possible lumbosacral disc disease, and possible peripheral neuropathy of the lower extremities. (Tr. 146-47).

**(6) Residual Functional Capacity ("RFC") Assessment – Physical dated September 30, 2003**. The examiner determined that claimant could lift/carry 20 pounds occasionally and 10 frequently; could stand/walk and sit about 6 hours in an 8-hour workday, and had unlimited push/pull ability. (Tr. 150). She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but

could never climb ladders, ropes, and scaffolds. (Tr. 151).

**(7) Medical Records from UMC dated October 14, 2003 to April 21, 2004.**
On October 14, 2003, claimant complained of hand pain and numbness, and tingling in her feet. (Tr. 191). She reported that she drank a six pack of beer every day. (Tr. 190). On examination, she had no edema, no deformity, good range of motion, and no tenderness to her back with palpation. (Tr. 190). She had negative Tinel's signs. (Tr. 191). She was taking Aleve and Excedrin for pain relief. (Tr. 190).

X-rays showed moderate cervical spondylosis. (Tr. 189, 191). The assessment was degenerative disc disease at C4-5, C5-6. (Tr. 191).

A cervical MRI dated October 27, 2003, showed diffuse bulges throughout the spine resulting in moderate to severe neural foraminal narrowing at C4-C5, C5-C6, and C6-C7. (Tr. 188). There was no central canal stenosis or evidence of cord compression. There was a 4 cm predominately cystic mass in the right lobe of the thyroid gland.

A thyroid ultrasound study dated December 4, 2003, showed a large complex, mainly cystic mass in the right lobe and a hypoechoic in the left lobe. (Tr. 183).

At a followup exam on February 18, 2004, claimant complained of headache and neck pain. (Tr. 179). Her blood pressure was 171/94. (Tr. 180). The assessment was uncontrolled hypertension, a thyroid cyst, and stable diverticular disease.

6

A lumbar MRI taken on March 1, 2004, showed minimal Grade I spondylolisthesis of L4 on L5, apparently secondary to degenerative change; prominent facet joint hypertrophy in the lower lumbar spine, and mild encroachment on the intervertebral foramina at L4-5 without evidence of focally herniated disc fragments. (Tr. 178).

On April 8, 2004, claimant underwent a right thyroid lobectomy. (Tr. 163). The mass was benign. (Tr. 165-66). At followup on April 15, 2004, claimant was doing well. (Tr. 160).

On April 21, 2004, claimant was seen for followup on the MRI. (Tr. 159). The assessment was chronic low back pain, most likely secondary to degenerative disease, for which she was prescribed Ultram, strengthening exercises and weight loss. Her blood pressure was stable on medications.

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on September 16, 2004, claimant was 61 years old. (Tr. 205). She testified that she was 5 feet 2½ inches tall, and weighed 190 pounds, which was down from her normal weight of 205 pounds. She was a high school graduate, and had two years of college.

Claimant had past work experience as an auditor and a binder at a print shop. (Tr. 215-17). She testified that she had last worked as a supervising night auditor. (Tr. 207). She stated that she had stopped working because the stress of the job and

the pain in her back and hands. She reported that she could not use a computer because of carpal tunnel syndrome. (Tr. 208). She said that she had worn a brace off and on for five years.

As to her back, claimant testified that she had pain from the bottom of her spine and across her pelvis to her legs at night. (Tr. 209). She reported that she was taking Ultracet for pain, which made her lightheaded and dizzy. (Tr. 209, 211). She stated that on a scale of 1 to 10, her pain was a constant 5 without medication, and 4 with medication. (Tr. 209). She said that her doctor would not give her anything else because of her diverticulosis. (Tr. 210).

Additionally, claimant complained of constant diarrhea. She stated that she had to go to the bathroom three times in the morning, and another two after she ate. She reported that she constantly took Imodium. She also said that she had problems sleeping because of leg and lower back pain. (Tr. 211). She testified that she had to lie down for about an hour in the morning and in the afternoon because of lack of sleep. (Tr. 219-20).

Regarding activities, claimant testified that she prepared her own meals with assistance and used an electric broom. (Tr. 212). She stated that her boyfriend helped with other chores. She reported that she could not put on her bra or do her hair.

8

Additionally, claimant stated that she drove, but then testified that she did not drive because she became dizzy. (Tr. 206-07). She reported that she watched television everyday from 6:00 p.m. to 10:00 p.m. (Tr. 213).

As to restrictions, claimant testified that she could sit for 15 to 20 minutes. She could stand for 10 to 15 minutes. (Tr. 214). She stated that she could walk about half a block. She reported that she could lift a gallon of milk at the most. Additionally, she complained that she could not work on a keyboard, because her thumbs and last two fingers dropped. (Tr. 214-15).

**(9) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred in concluding that she had the RFC to perform her past relevant work when the only report supporting that conclusion was from a non-examining consultant; (2) the ALJ erred in failing to consult a vocational expert to identify substantial gainful activity in light of her exertional and non-exertional limitations; (3) the ALJ erred in finding that a claimant who was 61 years of age could return to gainful activity without identifying any highly marketable skills, and (4) the ALJ erred in failing to consider her complaints of disabling pain and relying on *Hollis v. Bowen*, 837 F.2d 1378 (5th Cir. 1988), to conclude that in absence of objective evidence, pain was not a factor.

9

As to the first argument, claimant asserts that the "only thing" found in the record to support the ALJ's conclusion as to her RFC was the assessment by the non-examining consultant. (rec. doc. 11, p. 6). However, it is the claimant's burden to satisfy the first four steps of the sequential evaluation process, not the Commissioner's. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). In any event, substantial evidence supports the ALJ's finding.

Specifically, claimant argues that all of the medical evidence in the record, except for the RFC assessment by the non-examining physician, documents "severe" arthritic problems and diverticulitis, as well as a number of other ailments. (rec. doc. 11, p. 6). However, the ALJ specifically analyzed each of her complaints, and found that they were not disabling. (Tr. 15-18).

As to claimant's back and neck complaints, the ALJ noted that she required no surgery or therapy for these conditions, and that the objective findings did not preclude light work activity. (Tr. 18). This conclusion is supported not only by the report of the non-examining agency consultant, but also by examining physicians. UMC's records show that in October, 2003, claimant had no edema or deformity, good range of motion, no tenderness to the back with palpation, and a steady, upright gait. (Tr. 190). Additionally, Dr. Stagg found no muscle spasm, normal pulses, normal reflexes, no atrophy, and no muscle weakness. (Tr. 146).

Further, claimant's pain was relieved by Aleve and Excedrin. (Tr. 145, 190). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Moreover, claimant's reliance on over-the-counter medications does not support her complaints of disabling pain. *See*, *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991) (it was within the discretion of the ALJ to discount claimant's complaints of pain based on the medical reports combined with her daily activities and her decision to forego certain medications); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (reliance on aspirin does not suggest a disabling degree of pain); *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication is inconsistent with subjective complaints of disabling pain); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling back pain).

Regarding claimant's complaints of carpal syndrome, the ALJ found that this condition was not supported by the objective evidence of record. (Tr. 18). The medical records show that claimant complained of hand pain and numbness. (Tr. 191). However, she had negative Tinel's signs on examination. Thus, the ALJ's finding is supported by substantial evidence.

11

As to claimant's severe hypertension, the ALJ found that there was no evidence that this condition could not be controlled with medication. (Tr. 18). This finding is supported by the records from Felton Family Clinic, which showed that her blood pressure was under "good control," and UMC, which revealed that it was "stable," with medications. (Tr. 96, 159).

Regarding claimant's diverticulosis, the ALJ noted that claimant's allegations that she had three to five episodes of diarrhea daily were unsupported by the medical evidence. (Tr. 18). Additionally, he observed that she had no evidence of weight loss which might typically be expected to accompany such gastrointestinal problems. (Tr. 19). These findings are further supported by the most recent medical records from UMC indicating that her diverticular disease was stable. (Tr. 180).

Additionally, the medical record reflects that claimant failed to comply with her doctors' instructions regarding her diverticulosis. At her followup visit for diverticulosis, claimant was instructed to increase her fiber intake and decrease her alcohol intake. (Tr. 107). Despite that instruction, claimant continued to drink a six pack of beer per day. (Tr. 190). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Thus, claimant's argument that this condition was disabling is not supported by the evidence.

Next, claimant argues that the ALJ erred in failing to consult a vocational expert. (rec. doc. 11, p. 5). However, because the ALJ found at Step 4 that claimant was able to return to her past relevant work, it was not necessary for him to proceed to Step 5, where the burden shifts to the Commissioner to show that the claimant can perform other substantial work. (Tr. 19). A finding that the claimant is not disabled at any step is conclusive and ends the inquiry. *Masterson*, 309 F.3d at 272. Thus, this argument lacks merit.

Regarding claimant's complaints of pain, claimant asserts that the ALJ erred in relying on *Hollis v. Bowen*, *supra.* (rec. doc. 11, p. 4). However, it is still the law of this Circuit that the absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular atrophy, or impairment of general nutrition, could itself justify the ALJ's conclusion. *Id.* at 1384. In this case, the ALJ determined that claimant did not have any of these factors. (Tr. 18). This finding is supported by the report of Dr. Stagg, who determined that she was "well nourished," and had no muscle atrophy. (Tr. 146).

The ALJ determined that claimant's pain was not disabling based the objective evidence. (Tr. 18). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan,* 944 F.2d 243, 247

(5th Cir.1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991); *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). As the ALJ's determination as to pain is supported by the evidence, it is entitled to deference. *Id.*

Finally, claimant asserts that there is no evidence to support the ALJ's conclusion that she could sustain gainful activity, citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), and *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002). (rec. doc. 11, pp. 6-7). However, since the issuance of its decision in *Watson*, the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if [plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. **At bottom,** *Watson* **holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time**. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the

> ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

(emphasis added). *Id*. at 619.

Here, claimant has not demonstrated that her symptoms were of sufficient frequency or severity to prevent her from holding a job for a significant period of time as required by *Watson*. As noted by the ALJ, the objective evidence does not support the severity of the complaints alleged by claimant. (Tr. 18-19). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 29th day of March, 2006, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE